IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDREW PAUL LEONARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No: 08-067-LPS-CJB |
| STEMTECH HEALTH SCIENCES, | ) Consolidated |
| INC. and DOES 1-100, Inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

1. **FACTUAL AND PROCEDURAL HISTORY**

   A. **Facts Regarding Leonard's Images**

   Leonard is a photographer that specializes in microscopic photography. (Ex. 1, p. 2, ¶ 6 [D.I. 1][1].) In or about 1995, Leonard created four stem cell images entitled Scanning Electron Microscopy of Human Bone Marrow Stem Cells, Images 2 & 3, and Bone Marrow Stem Cells, Images 4 & 5. (Ex. 1, p. 2, ¶ 7 [D.I. 1]; Ex. 12, p. 2, ¶ 10 [D.I. 76].) All four of these images were registered with the U.S. Copyright Office on December 20, 2007. (Ex. 1, p. 2, ¶ 7, Ex. A thereto [D.I. 1]; Ex. 7; Ex. 12, p. 3, ¶ 11, Ex. B thereto [D.I. 76].) All four of these images were first published between 1999 and 2002, with Image 3 first being published on January 1, 2000. (Ex. 1, Ex. A thereto [D.I. 1]; Ex. 7, p. APL 00129; Ex. 12, Ex. B thereto [D.I. 76].)

   ///

---

[1] This docket number, D.I. 1, is the number given Leonard's Complaint in the *Leonard II* case. All other docket numbers referenced herein are the docket numbers for the documents filed in the *Leonard I* matter.

///

### B. Facts Regarding Stemtech

Stemtech was founded in 2005 and is a direct selling company that markets and sells nutritional supplements on its own and through its independent distributors. On or about October 11, 2005, Stemtech filed its Certificate of Incorporation in Delaware under the name Stemtech HealthSciences, Inc. (Ex. 11.) Thereafter, on or about October 12, 2009, the entity incorporated on October 11, 2005 as Stemtech HealthSciences, Inc. changed its name to Stemtech International, Inc. as it began more international expansion. (Ex. 11.) As part of this international growth Stemtech also went through a rebranding campaign and changed its logo in July 2010.

Stemtech operates through its vast network of independent distributors, which numbers in the tens of thousands. Initially, Stemtech allowed its independent distributors to create their own websites and marketing, as long as the content of those materials were approved by Stemtech in advance. Stemtech learned, however, that its distributors were both altering previously-approved materials to include non-approved material and creating their own marketing and websites without obtaining Stemtech's approval. Stemtech learned of this fact through Leonard and his counsel at the time, Sherry Flax, who sent Stemtech and/or its independent distributors outrageous demand letters in which they claimed copyright infringement and demanded in excess of $100,000 to settle for the purportedly unlawful use of a single image.

As a result of Leonard's and his counsel's allegations and the problems Stemtech had with policing a network consisting of tens of thousands of distributors, Stemtech changed its policies and ceased permitting its distributors to use their own websites or

marketing materials. Instead, Stemtech required and continues to require that all of its distributors use Stemtech's own marketing materials and its replicated website. With respect to the replicated website, Stemtech designs its corporate website and, when a distributor signs up and orders his or her own website, he or she gets their own URL that is personalized to them, but the content of the website is identical to Stemtech's website with a few exceptions. (Declaration of George Tashjian ["Tashjian Decl."], ¶ 3.) One of the exceptions is that a distributor has the ability to add a "headshot" and his or her contact information to their page. (Tashjian Decl., ¶ 3.) If they do so, this information is then visible from each page of the distributor's website, including sub-domains of that website that are accessed when a user clicks on a link on the distributor's website. (Tashjian Decl., ¶ 3.)

### C. Facts Regarding Leonard's First Lawsuit ("*Leonard I*")

On February 1, 2008, prior to the date Stemtech HealthSciences, Inc. changed its name to Stemtech International, Inc., Leonard filed a lawsuit against Stemtech HealthSciences, Inc. in which he asserted a single count for copyright infringement pertaining to Images 4 and 5. Thereafter, on July 16, 2009, following the mediation at which Stemtech informed Leonard and his counsel of his inability to recover attorney's fees and statutory damages due to his failure to register his images prior to Stemtech's purported commencement of its infringement, Leonard filed a Motion for Leave to File an Amended Complaint, which this Court granted on July 16, 2010. In his operative First Amended Complaint, Leonard added a new count for direct copyright infringement of Images 2 and 3 and 36 counts of vicarious and/or contributory infringement for

Stemtech's independent distributors' alleged infringement of Leonard's images. (Ex. 12 [D.I. 76].)

In his First Amended Complaint, Leonard alleges that Stemtech directly and indirectly through its independent distributors infringed upon Images 2, 3, 4 and 5 by "using, copying, and displaying the images...on its Internet websites, in publications, and in video presentations without authorization."[2] (Ex. 12, pp. 4, 5, ¶¶ 17, 23 [D.I. 76].) Two of the websites upon which Leonard alleges Stemtech has illegally posted his images, including Image 3, are www.stemtechbiz.com and img.exigo.com. (Ex. 12, p. 5, ¶ 23 [D.I. 76].) Leonard also alleges that Stemtech "continues to use, copy and display the Images without license or permission" and that he has uncovered more than 100 alleged unauthorized uses of Images 3 and 4. (Ex. 12, p. 6, ¶ 25 [D.I. 76]; Ex. 6, pp. 5-7 [D.I. 108].) Leonard has consistently alleged that Stemtech's and its independent distributors' infringement of Images 3 and 4 commenced well <u>before</u> he registered the images on December 20, 2007. (E.g., Ex. 3; Ex. 4; Ex. 5, p. 3, ¶¶ 6-8 [D.I. 109]; Ex. 6, pp. 5, 7 [D.I. 108].)

On December 30, 2010, Stemtech filed a Motion for Summary Judgment, in which it argued that Leonard was not entitled to recover statutory damages or attorney's fees on any of his claims because he failed to register his images before Stemtech's and its independent distributors' purported infringement of them commenced. Stemtech also argued that Leonard was not entitled to recover any of Stemtech's profits because he could not establish the necessary causal nexus. On December 5, 2011, Magistrate Judge Burke issued his Report and Recommendation on Stemtech's motion ("Report"). (Ex. 9

---

[2] Images 2 and 5 are no longer at issue in this case as all claims relating to Image 2 were knocked out on summary judgment and Leonard admitted he is not alleging any infringement of Image 5.

4

[D.I. 149].) In this Report, Magistrate Judge Burke recommended that Stemtech's Motion for Summary Judgment be granted, which had the effect of knocking out Leonard's claims for statutory damages, attorney's fees and profits, leaving only his nominal actual damages. (Ex. 9 [D.I. 149].) Judge Stark adopted Magistrate Judge Burke's Report on March 28, 2012. (Ex. 10 [D.I. 155].)

> D. **Facts Regarding Leonard's Second Lawsuit ("*Leonard II*")**

On January 27, 2012, less than two months after Magistrate Judge Burke issued his Report, Leonard filed a second lawsuit against Stemtech International, Inc., the same entity sued in *Leonard I*. (Ex. 1 [D.I. 1]; also Ex. 9 [D.I. 149]; Ex. 11.) In *Leonard II*, Leonard alleges the identical claims against Stemtech that he alleges in *Leonard I*, namely that Stemtech infringed upon his Image 3 by improperly and without his permission posting it on its official website, stemtechbiz. (Ex. 1, pp. 2-3, ¶ 8 [D.I. 1]; also Ex. 12, p. 5, ¶ 23 [D.I. 76].) Unlike in *Leonard I*, however, in which Leonard has consistently alleged and admitted that Stemtech's infringement of Image 3 commenced well before he registered the image on December 20, 2007, coincidentally in *Leonard II*, Leonard claims that Stemtech's infringement of Image 3 did not commence until January 16, 2012. (Ex. 1, pp. 2-3, ¶ 8 [D.I. 1]; Ex. 3; Ex. 4; Ex. 5, p. 3, ¶¶ 6-8 [D.I. 109]; Ex. 6, pp. 5, 7 [D.I. 108].) Such crafty pleading is misleading and ignores all of the admissions and evidence Leonard presented in *Leonard I*, presumably in a bad faith effort to revive his barred claims for statutory damages and attorney's fees, the only claims that have any value in this case.

At issue in *Leonard II* is the use of Leonard's Image 3 by two of Stemtech's independent distributors, who used Image 3 as their "headshot" on their personalized websites. (Ex. 1 [D.I. 1]; Ex. 2; Tashjian Decl., ¶ 4.)

///

2. **UNDISPUTED MATERIAL FACTS RELEVANT TO THIS MOTION**

   A. **Undisputed Material Facts Relating to Leonard's Claim for Copyright Infringement Against Stemtech**

| Undisputed Material Fact | Supporting Evidence |
|---|---|
| 1. Leonard's claim for copyright infringement against Stemtech involves the posting of his Image 3 by two of Stemtech's independent distributors as their "headshot" on their respective websites. | 1. Complaint, pp. 2-3, ¶ 8 [Exhibit 1, D.I. 1]; Documents produced by Leonard during discovery, bates numbered DefSupp 000015-000075 [Exhibit 2]; Declaration of George Tashjian, ¶ 4. |
| 2. The two independent distributors that posted Leonard's Image 3 as their "headshot" on their respective websites have been identified as Joe Cinocca and David Velasco. | 2. Declaration of George Tashjian, ¶ 5. |
| 3. Stemtech did not post Image 3 on either Joe Cinocca's or David Velasco's respective websites. | 3. Declaration of George Tashjian, ¶ 6. |
| 4. The use of Image 3 as Joe Cinocca's and David Velasco's "headshot" on their respective websites was not a part of Stemtech's replicated website. | 4. Declaration of George Tashjian, ¶ 6. |

### B. Undisputed Material Facts Relating to Leonard's Claim for Statutory Damages and Attorney's Fees

| Undisputed Material Fact | Supporting Evidence |
|---|---|
| 5. Stemtech's and its independent distributors' alleged infringement of Image 3 began before December 20, 2007. | 5. Report of Copyright Infringement [Exhibit 3]; Documents produced by Leonard during discovery, bates numbered APL00014, 18, 36 and 42-47 [Exhibit 4]; Affidavit of Andrew Paul Leonard, p. 3, ¶¶ 6-8 [Exhibit 5, D.I. 109]; Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment, pp. 5, 7 [Exhibit 6, D.I. 108]. |
| 6. Leonard did not register Image 3 until December 20, 2007. | 6. Complaint, p. 2, ¶ 7, and Ex. A thereto [Exhibit 1, D.I. 1]; Certificate of Registration [Exhibit 7]; Affidavit of Andrew Paul Leonard, p. 2, ¶ 4 [Exhibit 5, D.I. 109]; Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment, pp. 5, 7 [Exhibit 6, D.I. 108]. |
| 7. Image 3 was first published on January 1, 2000. | 7. Certificate of Registration, p. APL 00129 [Exhibit 7]; Plaintiff's Answers to Defendant Stemtech Health Sciences, Inc.'s Third Set of Interrogatories, Response to Interrogatory No. 52 [Exhibit 8]. |
| 8. This Court found in *Leonard I* that Leonard is not entitled to recover statutory | 8. Report and Recommendation Regarding Motion for Summary Judgment, |

| Undisputed Material Fact | Supporting Evidence |
|---|---|
| damages or attorney's fees in that case for Stemtech's and/or its independent distributors' alleged infringement of Image 3 because Leonard failed to register that image before the purported continuing infringement commenced. | pp. 22-37 [Exhibit 9, D.I. 149]; PACER Email re: Memorandum Order Adopting Report and Recommendation granting Stemtech's Motion for Summary Judgment, signed by Judge Leonard P. Stark on March 28, 2012 [Exhibit 10, D.I. 155]. |
| 9. On or about October 12, 2009, the entity incorporated on October 11, 2005 as Stemtech HealthSciences, Inc. changed its name to Stemtech International, Inc. | 9. Documents filed with the Delaware and California Secretary of State [Exhibit 11]. |

C. **Undisputed Material Facts Relating to Leonard's Claim for Stemtech's Profits**

| Undisputed Material Fact | Supporting Evidence |
|---|---|
| 10. In *Leonard I*, Leonard alleges that Stemtech infringed upon his Images 2, 3 and 4 hundreds of times by placing them on myriad websites, in its videos, in its *HealthSpan* magazine and/or in its other marketing materials. | 10. First Amended Complaint, pp. 4-32, ¶¶ 16-208 [Exhibit 12, D.I. 76]; Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment, p. 7 [Exhibit 6, D.I. 108]. |
| 11. This Court found in *Leonard I* that Leonard is not entitled to recover any of Stemtech's profits in that case because Leonard could not present any non-speculative evidence linking a customer's decision to purchase Stemtech's product with Stemtech's use of Leonard's Images 3 | 11. Report and Recommendation Regarding Motion for Summary Judgment, pp. 37-48 [Exhibit 9, D.I. 149]; PACER Email re: Memorandum Order Adopting Report and Recommendation granting Stemtech's Motion for Summary Judgment, signed by Judge Leonard P. Stark on March |

8

| Undisputed Material Fact | Supporting Evidence |
|---|---|
| and 4 on or in its website, videos, *HealthSpan* magazine or other marketing materials. | 28, 2012 [Exhibit 10, D.I. 155]. |
| 12. In *Leonard II*, Leonard has only presented evidence that one of his images, Image 3, appeared on two independent distributors' websites as their "headshot." | 12. Complaint, pp. 2-3, ¶ 8 [Exhibit 1, D.I. 1]; Documents produced by Leonard during discovery, bates numbered DefSupp 000015-000075 [Exhibit 2]; Declaration of George Tashjian, ¶ 4. |
| 13. On or about October 12, 2009, the entity incorporated on October 11, 2005 as Stemtech HealthSciences, Inc. changed its name to Stemtech International, Inc. | 13. Documents filed with the Delaware and California Secretary of State [Exhibit 11]. |

3. **STANDARD APPLICABLE TO A SUMMARY JUDGMENT MOTION**

A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. P. 56(b). A party is entitled to summary judgment if the evidence establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment as only a *genuine issue of material fact* will do so. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). In order to avoid summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial and may not simply rest upon the mere allegations or denials in its pleadings. *Id.* at 248. There is no genuine issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249.

///

4. **STEMTECH IS ENTITLED TO SUMMARY JUDGMENT OF LEONARD'S CLAIM FOR COPYRIGHT INFRINGEMENT BECAUSE LEONARD CANNOT ESTABLISH THE ELEMENTS NECESSARY TO PREVAIL ON SUCH A CLAIM**

In his Complaint, Leonard alleges one cause of action for direct copyright infringement against Stemtech for its purported posting of Leonard's Image 3 on the following two independent distributor websites and their sub-domains: whatarestemcells.stemtechbiz and regeneracionvital.stemtechbiz. (Undisputed Material Fact ["UMF"] 1; Ex. 1, pp. 203, ¶ 8 [D.I. 1]; Ex. 2; Tashjian Decl., ¶¶ 3-6.) To prevail on such a claim, Leonard must prove: (1) ownership of the copyright; and (2) copying by Stemtech. *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 290 (3d Cir. 1991). Leonard, however, cannot establish the second element.

The two websites at issue are operated by two of Stemtech's independent distributors who have been identified as Joe Cinocca and David Velasco. (UMF 1, 2; Ex. 1, pp. 2-3, ¶ 8 [D.I. 1]; Ex. 2; Tashjian Decl., ¶¶ 3-6.) For a very short period of time, Cinocca and Velasco had Image 3 posted as their "headshot" on their respective websites, one of the few elements of Stemtech's replicated website that its independent distributors have the ability to control and alter. (UMF 1, 2; Ex. 1, pp. 2-3, ¶ 8 [D.I. 1]; Ex. 2; Tashjian Decl., ¶¶ 3-6.) Stemtech did not post Image 3 on either Cinocca's or Velasco's respective websites, nor was the use of Image 3 as Cinocca's and Velasco's "headshots" a part of the content Stemtech placed on its replicated website. (UMF 3, 4; Tashjian Decl., ¶ 6.) Consequently, Leonard cannot establish that Stemtech copied his image, one

10

of the necessary elements of his direct infringement claim. (UMF 3, 4; Tashjian Decl., ¶¶ 3-6.) Therefore, Stemtech's Motion must be granted.

5. **STEMTECH IS ENTITLED TO SUMMARY JUDGMENT ON LEONARD'S CLAIM FOR STATUTORY DAMAGES AND ATTORNEY'S FEES AS HE FAILED TO REGISTER IMAGE 3 UNTIL AFTER THE ALLEGED INFRINGEMENT BEGAN**

Under 17 U.S.C. §§ 504 and 505, a successful plaintiff in a copyright infringement case may recover statutory damages and attorney's fees. Section 412(2), however, limits the scope of these two sections by providing that "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for…any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2). The purpose of this rule is two-fold. First, by denying an award of statutory damages and attorney's fees in those situations where infringement takes place before registration, Congress sought to provide copyright owners with an incentive to register their copyrights promptly. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008); *Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998). Second, by subjecting potential infringers to statutory damages and attorney's fees, Section 412 encourages potential infringers to check the Copyright Office's database. *Derek Andrews*, 528 F.3d at 700; *Johnson*, 149 F.3d at 505.

The numerous courts that have considered this rule have consistently held that Section 412 leaves no room for discretion and absolutely mandates that, in order to recover statutory damages and attorney's fees, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work. E.g., *Derek Andrew*, 528 F.3d at

699, 701-702; *Johnson*, 149 F.3d at 505; *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1111 (1st Cir. 1993); *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 142-144 (5th Cir. 1992); *Evans Newton, Inc. v. Chicago Systems Software*, 793 F.2d 889, 896-897 (7th Cir. 1986); *Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, 2005 U.S. Dist. LEXIS 416, *9, 11 (E.D. Pa. 2005). Consequently, as the Sixth Circuit has recognized, "the simplicity of [Section] 412 confers upon all parties involved the clarity and low administrative costs of a **brightline rule**." *Johnson*, 149 F.3d at 505. [Emphasis added.]

For purposes of Section 412, every single court that has considered this issue has concluded that infringement "commences" when the first act in a series of acts constituting continuing infringement occurs. E.g., *Derek Andrew*, 528 F.3d at 700-701; *Johnson*, 149 F.3d at 505-506; *Mason*, 967 F.2d at 142-144; *Schiffer Publishing*, 2005 U.S. Dist. LEXIS 416 at *9; *EZ-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F.Supp. 728, 735-736 (S.D.N.Y. 1996); *Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*, 832 F.Supp. 1378, 1392-1395 (C.D. Cal. 1993); *Singh v. Famous Overseas, Inc.*, 680 F.Supp. 533, 535-536 (E.D.N.Y. 1988); *Johnson v. Univ. of Virginia*, 606 F.Supp. 321, 324-325 (W.D. Va. 1985). Thus, a plaintiff is precluded from recovering statutory damages and attorney's fees if the first infringing act of a copyrighted work took place before the date of registration, even if the infringer continues to infringe upon the same work after registration. *Ibid.*

Leonard actually conceded this fact in his Opposition to Stemtech's Motion for Summary Judgment in *Leonard I*, and the fact that he could not recover statutory damages or attorney's fees for Stemtech's direct infringement of any of his images that

commenced before December 20, 2007 and continued thereafter, as evidenced by the following:

> While 17 U.S.C. § 412 may operate to preclude the recovery of statutory damages and attorneys' fees for direct infringement by StemTech which commenced before December 20, 2007, the date of Plaintiff's registration, and continued thereafter, there is no logic which would make that reasoning applicable to new infringements commenced after registration for which StemTech is contributorily and/or vicariously liable.

(Ex. 6, p. 14 [D.I. 108].) Incredulously, despite this admission, the <u>undisputed</u> evidence that Stemtech's purported infringement of Image 3 commenced before Leonard registered that image and this Court's ruling in *Leonard I* that Leonard is barred from recovering statutory damages and attorney's fees for Stemtech's direct, contributory or vicarious infringement of Image 3, Leonard filed *Leonard II* and frivolously seeks to recover statutory damages and attorney's fees from Stemtech, the <u>identical</u> entity in *Leonard I*, for its alleged direct infringement of Image 3. (UMF 5-9; Ex. 1 [D.I. 1]; Ex. 3; Ex. 4; Ex. 5, pp. 2, 3, ¶¶ 4, 6-8 [D.I. 109]; Ex. 6, pp. 5, 7 [D.I. 108]; Ex. 7; Ex. 9, pp. 22-37 [D.I. 149]; Ex. 10 [D.I. 155]; Ex. 11.) Such bad faith and harassing conduct should not be condoned.

Even disregarding Leonard's admission that he is not entitled to recover statutory damages or attorney's fees for Stemtech's alleged direct infringement of Image 3 and this Court's ruling in *Leonard I*, the undisputed evidence in this case shows that Leonard did not register Image 3 until December 20, 2007. (UMF 6; Ex. 1, p. 2, ¶ 7, and Ex. A thereto [D.I. 1]; Ex. 7; Ex. 5, p. 2, ¶ 4 [D.I.109]; Ex. 6, pp. 5, 7 [D.I. 108].) It is also undisputed that Leonard concedes that Stemtech and its independent distributors began using Image 3 without his permission well **before** this December 20, 2007 registration

date. (UMF 5; Ex. 3; Ex. 4; Ex. 5, p. 3, ¶¶ 6-8 [D.I. 109]; Ex. 6, pp. 5, 7 [D.I. 108].) In fact, in his own <u>sworn</u> affidavit submitted in support of his Opposition to Stemtech's Motion for Summary Judgment in *Leonard I*, Leonard attested to the following facts:

> 6. In October 2007, I discovered two of my images (3 and 4) in multiple places on a website selling StemTech's StemEnhance product at <u>yourstems.com</u>. I discovered many more websites shortly thereafter which were displaying my images in connection with StemTech and the StemEnhance product. I realized that these multiple website uses of my images were connected to StemTech.
>
> 7. In November 2007, I was in contact with StemTech's corporate compliance officer, Donna Marie Serritella, regarding the multiple StemTech and StemTech representatives' unlicensed website uses of my images. ...
>
> 8. I continued to discover many StemTech and StemEnhance websites using my images through November and December of 2007. As noted above, I registered my images on December 20, 2007 with the United States Copyright Office.

(Ex. 5, p. 3, ¶¶ 6-8 [D.I. 109]; also Ex. 6, pp. 5, 7 [D.I. 108].) Thus, Leonard himself unequivocally admits that Stemtech's and its independent distributors' purported infringement of Image 3 commenced in October 2007, well <u>before</u> he registered that image on December 20, 2007.

Even if this was not the case, the documents Leonard produced in discovery in *Leonard I* show that any alleged infringement of Image 3 commenced before the date of registration. (Ex. 3; Ex. 4.) These documents show that Leonard not only knew about any alleged infringement of Image 3 by Stemtech and its independent distributors prior to December 20, 2007, but that he was actually contacting Stemtech and some of its distributors in October and November of 2007 regarding their alleged infringement of this image. (Ex. 3; Ex. 4.) Therefore, Leonard's <u>own</u> affidavit and evidence establish

14

that Stemtech's and its independent distributors' alleged infringement of Image 3 began before Leonard registered that image on December 20, 2007. (UMF 5, 6; Ex 1, p. 2, ¶ 7, and Ex. A thereto [D.I. 1]; Ex. 3; Ex. 4; Ex. 5, p. 3, ¶¶ 6-8 [D.I. 109]; Ex. 6, pp. 5, 7 [D.I.108]; Ex. 7.)

This unavoidable conclusion precludes Leonard from recovering statutory damages or attorney's fees unless he can show that Image 3 was registered within three (3) months of its first publication. 17 U.S.C. § 412(2). Leonard, however, cannot do this and, in fact, his own verified discovery responses and the Certificate of Registration show that Image 3 was actually registered **years** after it was first published. Specifically, Image 3 was first published on January 1, 2000, nearly ***eight (8) years before Leonard registered it on December 20, 2007***. (UMF 6, 7; Ex. 1, p. 2, ¶ 7, and Ex. A thereto [D.I. 1]; Ex. 5, p. 2, ¶ 4 [D.I. 109]; Ex. 6, pp. 5, 8 [D.I. 108]; Ex. 7; Ex. 8, Response to Interrogatory No. 52.) Consequently, as this Court previously found, and based upon all of the case law discussed above and Leonard's own admissions, discovery responses and documents, Leonard is precluded from recovering any statutory damages or attorney's fees in this case and, as a result, Stemtech is entitled to summary judgment on this issue.

6. **STEMTECH IS ENTITLED TO SUMMARY JUDGMENT ON LEONARD'S CLAIMS FOR STEMTECH'S PROFITS BECAUSE LEONARD CANNOT PROVE THE REQUISITE CAUSAL CONNECTION**

Under the Copyright Act, although a successful plaintiff is entitled to recover an accused infringer's profits, if warranted, this right is limited to profits flowing from the infringing activities. 17 U.S.C. § 504(b); *Leigh v. Engle*, 727 F.2d 113, 138 (7th Cir. 1984); *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F.Supp.2d 923, 927 (N.D. Ill. 2003). Such a rule applies even to a plaintiff's attempt to recover a

defendant's "indirect profits," which are "profits earned not by selling an infringing product, but rather earned from the infringer's operations that were enhanced by the infringement," which is revenue that "has a more attenuated nexus to the infringement." *William H. Graham Co. v. Haughey*, 568 F.3d 425, 442 (3d Cir. 2009); *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). To recover indirect profits, a claim on which plaintiffs "rarely succeed," a plaintiff must prove the existence of a legally significant causal link between the defendant's infringement and its profits before such profits can be recovered and before the burden shifts to the defendant to apportion profits that were not the result of any infringement. *Mackie*, 296 F.3d at 914; *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 710-711 (9th Cir. 2004); *Univ. of Colorado Found., Inc. v. American Cyanamid Co.*, 196 F.3d 1336, 1375 (Fed. Cir. 1999), citing 4 Nimmer on Copyright § 14.03[A] (1999); see also *Ocean Atlantic*, 262 F.Supp.2d at 927, citing *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983) and *PAR Microsystems, Inc. v. Pinnacle Dev. Corp.*, 995 F.Supp. 658, 661 (N.D. Tex. 1998). This burden entails more than simply providing evidence of the defendant's total gross profits during the relevant time period. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159-161 (2d Cir. 2001); *Taylor*, 712 F.2d at 1122. Moreover, if the defendant's profits are only remotely or speculatively attributable to its alleged infringement, the plaintiff must be denied recovery of any profits and summary judgment must be granted. *Polar Bear*, 384 F.3d at 711; *Mackie*, 296 F.3d at 911; *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 521-522 (4th Cir. 2003); *Ocean Atlantic*, 262 F.Supp.2d at 927, citing *Frank Music Corp. v. MGM*, 886 F.2d 1545, 1553 (9th Cir. 1989). In fact, it is well-settled that neither "unsupported speculation," nor evidence that is "merely colorable" or "not significantly

probative," will suffice to defeat a summary judgment motion. *Bouchat*, 346 F.3d at 522; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Thus, to avoid summary judgment, a plaintiff seeking profits **must** set forth specific facts showing the requisite causal link through affidavits or other verified evidence. *Bouchart*, 346 F.3d at 522; Fed. R. Civ. P. 56(e).

In this case Leonard seeks all of Stemtech's profits that were derived from its alleged unlawful use of Image 3 on two independent distributor websites. (UMF 12; Ex. 1, pp. 2-3, ¶ 8 [D.I. 1]; Ex. 2.) Even assuming Leonard can establish that Stemtech infringed upon his Image 3, he has not produced a single piece of evidence that supports his claim that any of Stemtech's profits were the result of, let alone the direct result of, its purportedly unlawful use of Leonard's image on these two websites, nor will he ever be able to do so. This is not a case where the relationship between an infringer's profits and its unlawful conduct are readily apparent and clearly connected, such as where the infringer is selling illegal copies of copyrighted movies or CDs. Instead, it is a case where Stemtech sells nutritional supplements and where Leonard will have to prove that Stemtech's consumers purchased these nutritional supplements because Leonard's stem cell image was placed as the "headshot" on two of Stemtech's tens of thousands of independent distributors' websites for a brief period of time. Unfortunately for Leonard, there is no evidence to support this contention, nor will there ever be any as such a claim belies logic.

It bears noting that, in *Leonard I*, this Court granted Stemtech's Motion for Summary Judgment on this identical issue. (UMF11; Ex. 9, pp. 37-48 [D.I. 149]; Ex. 10 [D.I. 155].) In *Leonard I*, however, Leonard alleged and presented evidence of much

more than the placement of a small picture of one of his images on two websites. (UMF 10; Ex. 12, pp. 4-32, ¶¶ 16-208 [D.I. 76]; Ex. 6 [D.I. 108].) In particular, in *Leonard I* and at issue in Stemtech's prior successful Motion for Summary Judgment, were allegations that Stemtech infringed <u>hundreds</u> of times upon <u>three</u> separate images, including Image 3, by placing them on myriad websites, in Stemtech's videos, in its *HealthSpan* magazine and/or in its other marketing materials. (UMF 10; Ex. 12, pp. 4-32 [D.I. 76]; Ex. 6, p. 7 [D.I. 108]; also Ex. 9, pp. 37-48 [D.I. 149].) Even with such allegations, this Court ruled that Leonard was not entitled to recover any of Stemtech's profits because Leonard could not present any non-speculative evidence linking a customer's decision to purchase Stemtech's products with Stemtech's use of Leonard's images on its website, in its videos or in its marketing materials, including the *HealthSpan* magazine. (UMF 11; Ex. 9, pp. 37-49 [D.I. 149]; Ex. 10 [D.I. 155].) If Leonard could not make such a showing in *Leonard I* where the allegations were much more broad and involved multiple images and hundreds of alleged infringements in all sorts of media, he certainly cannot make the showing in this case, which involves only one image, Image 3, appearing on two independent distributor websites as their "headshot." (UMF 10-13; Ex. 12, pp. 4-32, ¶¶ 16-208 [D.I. 76]; Ex. 6, p. 7 [D.I. 108]; Ex. 9, pp. 37-48 [D.I. 149]; Ex. 10 [D.I. 155]; Ex. 1, pp. 2-3, ¶ 8 [D.I. 1]; Ex. 2; Ex. 11; Tashjian Decl., ¶ 4.) Therefore, since Leonard cannot establish the requisite actual relationship between Stemtech's purported use of his image and its profits and any causal relationship is way too attenuated or speculative, Stemtech is entitled to summary judgment on this claim.

7. **CONCLUSION**

Based upon the foregoing, Stemtech respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

DATED: May 24, 2013

CASARINO CHRISTMAN SHALK
RANSON & DOSS, P.A.

By: /s/ Stephen P. Casarino
Stephen P. Casarino (DE0174)
405 North King Street, Suite 300
P.O. Box 1276
Wilmington, DE 19899-1276
Telephone: (302) 594-4500
Email: scasarino@casarino.com

*Attorneys for Stemtech HealthSciences, Inc. and Stemtech International, Inc.*

*Associated Counsel:*

Kathleen Mary Kushi Carter
Christine R. Arnold
HOLLINS LAW
2601 Main Street, Penthouse Suite 1300
Irvine, California 92614-4239
Telephone: (714) 558-9119