## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANDREW PAUL LEONARD, )
)
Plaintiff, )
)
v. ) Civil Action No. 08–067–LPS–CJB
) Consolidated
STEMTECH HEALTH SCIENCES, )
INC., et al., )
)
Defendants. )

## MEMORANDUM ORDER

In this consolidated action, Plaintiff Andrew Paul Leonard ("Plaintiff" or "Leonard")

brought suit against Defendant Stemtech Health Sciences, Inc./Stemtech International, Inc.

(collectively, "Stemtech" or "Defendant") and John Does 1-100 for copyright infringement in

violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and the common law, relating to

certain photographic images created by Plaintiff.[1] Pending before the Court is Defendant's

*Daubert* motion ("Motion") to exclude the opinions and testimony of Plaintiff's expert, Professor

Jeff Sedlik with respect to Plaintiff's actual damages. (D.I. 177)[2] For the following reasons, the

Court DENIES the Motion.

---

[1]    The consolidated cases are *Andrew Paul Leonard v. Stemtech Health Sciences, Inc. and John Does 1-100, Inclusive,* Civil Action No. 08-67-LPS-CJB ("*Leonard I*") and *Andrew Paul Leonard v. Stemtech International Inc.,* 12-86-LPS-CJB ("*Leonard II*"). Unless otherwise noted, citations to docket numbers are to documents that have been filed in the *Leonard I* action.

[2]    Under the circumstances here, the resolution of this *Daubert* motion is properly treated as non-dispositive, and is resolved by the Court pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). *See, e.g., Withrow v. Spears,* Civil Action No. 12-06-LPS-CJB, 2013 WL 4510305, at *1 n.1 (D. Del. Aug. 22, 2013) (citing cases).

# I. BACKGROUND[3]

Plaintiff is a professional photographer who specializes in creating images of microscopic subject matter, using a scanning electron microscope ("SEM") as his camera. (*Leonard II*, D.I. 1 at ¶ 6) In 1995, using an SEM, Plaintiff created the images still at issue in this action ("Image 3" and "Image 4", collectively, the "Images"), photographs of human bone marrow stem cells. (D.I. 76 at ¶ 10) Defendant Stemtech is a direct sales company that markets and sells nutrition supplements on its own and through independent distributors. (D.I. 6 at ¶ 13)

To license his photographs, Plaintiff has used the services of a stock photography company, Photo Researchers, Inc. ("Photo Researchers"). (D.I. 177, Declaration of Christine Arnold in Support of Motion to Exclude Jeff Sedlik's Opinions ("Arnold Declaration") at ¶ 3) In this action, Defendant has subpoenaed the records from Photo Researchers relating to Leonard's Images from 1997 to the present. (*Id.*) These records, provided by Defendant, indicate that Plaintiff has licensed Images 3 and 4 in only a small number of instances since 1997. (*Id.*, exs. 6-7; D.I. 177 at 5-6)

According to Plaintiff, after certain interactions occurred between the parties in 2006, Defendant thereafter began to make unauthorized uses of the Images. Specifically, Plaintiff alleges that Stemtech is liable for direct copyright infringement due to Stemtech's "using,

---

[3]     In this section, the Court will assume familiarity with the facts and procedural history detailed in its prior opinions in this consolidated action, *Leonard v. Stemtech Health Scis., Inc.*, Civil Action No. 08-67-LPS-CJB, (D.I. 198) (D. Del. Sept. 19, 2013); *Leonard v. Stemtech Health Scis., Inc.*, Civil Action No. 08-67-LPS-CJB, 2011 WL 6046701 (D. Del. Dec. 5, 2011) and *Leonard v. Stemtech Int'l, Inc.*, Civ. Action No. 12-86-LPS-CJB, 2012 WL 3655512 (D. Del. Aug. 24, 2012). To the extent that certain facts are particularly relevant to the issues raised by the instant Motion, the Court will include them here.

2

copying, and displaying" Plaintiff's Images[4] on its Internet websites, in publications, and in video presentations without authorization. (D.I. 76 at ¶¶ 17-18, 23-24) Plaintiff also alleges that Stemtech is liable for contributory and vicarious copyright infringement, linked to the alleged display of the Images on websites of various distributors of Defendant's products. (*Id.* at ¶¶ 28-208)[5] Following the Court's resolution of two motions for summary judgment filed by Defendant in this consolidated action, Plaintiff's claims for actual damages and for a permanent injunction regarding the alleged infringement of Images 3 and 4 asserted in *Leonard I* remain pending. (*See* D.I. 149; D.I. 155; D.I. 198)

Plaintiff retained Professor Sedlik, a professional photographer and educator, as an expert in this action, to offer opinions regarding, *inter alia*, "licensing issues [and] applicable damages." (D.I. 177 , ex. 3 at 1 & ex. A) Professor Sedlik issued a Preliminary Expert Report (hereinafter "Preliminary Report") in which he purported to calculate Plaintiff's actual damages resulting from the infringement at issue in *Leonard I*, and opined that Plaintiff is entitled to actual damages in the amount of at least $215,767.65. (*Id.* at 26-29)[6] Professor Sedlik explained that

---

[4]     Although Plaintiff originally asserted infringement against Defendant with respect to four of his photographic images, two (Image 2 and Image 5) are no longer at issue in this action. (D.I. 198 at 5 n.4)

[5]     Additionally, Plaintiff's Complaint in *Leonard II* asserts one count of copyright infringement against Defendant under 17 U.S.C. § 101, with respect to the use of Image 3 by two of Defendant's independent distributors on their personalized websites. (*Leonard II*, D.I. 1) On September 19, 2013, the Court issued a Report and Recommendation recommending that the District Court enter summary judgment in Defendant's favor with respect to this claim. (D.I. 198)

[6]     Professor Sedlik also issued a Supplemental Expert Report in which he purported to calculate Plaintiff's actual damages resulting from the infringement at issue in *Leonard II*, and opined that Plaintiff is entitled to actual damages in the amount of at least $33,660.00. (D.I. 177, ex. 4 at 13-14) However, because the Court has recommended that summary judgment be

3

this figure represents "a reasonable estimate of licensing fees applicable to the" alleged infringements at issue. (*Id.* at 26) To arrive at this figure, Professor Sedlik obtained "comparative stock photography license fee quotes from several stock photography agencies." (*Id.*) Professor Sedlik then calculated a total fee based on these quotes and on several other factors, including his personal knowledge and experience in the field. (*Id.* at 26-27)

On May 24, 2013, Defendant filed the instant Motion. (D.I. 177) Briefing on the Motion was completed on June 24, 2013. (D.I. 188) Trial is to begin on October 8, 2013. (D.I. 191)

## II. STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of qualified expert testimony, providing that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702's requirements have been examined in detail by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and have been said to embody "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB*

---

entered in favor of Defendant on Plaintiff's claim contained in the *Leonard II* Complaint, the Court will hereafter focus on Professor Sedlik's opinions with respect to actual damages resulting from the infringements at issue in *Leonard I*, as set out in his Preliminary Report. The Court notes that Professor Sedlik calculated Plaintiff's actual damages in *Leonard II* using the same basic methodology that he utilized in calculating actual damages in *Leonard I*, and therefore, in the event that the former testimony becomes relevant, the Court's analysis would be the same.

4

*Litig.*, 35 F.3d 717, 741–43 (3d Cir. 1994)); *see also B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010).

In terms of expert qualifications, an inquiry under Rule 702 must address whether the expert witness has "'specialized knowledge' regarding the area of testimony." *Elcock*, 233 F.3d at 741 (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). The basis of this specialized knowledge may be "practical experience as well as academic training and credentials." *Id.* (internal quotation marks and citation omitted). At a minimum, however, "a proffered expert witness must . . . possess skill or knowledge greater than the average layman." *Id.* (internal quotation marks and citation omitted). The United States Court of Appeals for the Third Circuit has tended to apply this standard liberally. *Id.*; *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

With regard to the second requirement of reliability, Rule 702 mandates that the relevant expert testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590; *see also Schneider*, 320 F.3d at 404. The information provided by experts should be "ground[ed] in the methods and procedures of science" and be "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see also Schneider*, 320 F.3d at 404.[7] In examining this requirement, a court's focus must be on "principles and methodology" rather than on the conclusions generated by the expert. *Daubert*, 509 U.S. at 595; *see also Schneider*, 320 F.3d at 404.

The third requirement of expert testimony, the "fit" requirement, "goes primarily to

---

[7]     The Supreme Court later held in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), that the obligations imposed by *Daubert* extended to not only scientific expert testimony but rather to all expert testimony. *Kumho Tire Co.*, 526 U.S. at 147.

5

relevance" as the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92 (internal quotation marks and citation omitted); *see also Schneider*, 320 F.3d at 404. The standard for fit, however, is not a high one; it is met "when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (quoting *Lauria v. Amtrak*, 145 F.3d 593, 600 (3d Cir. 1998)).

Overall, "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen AG*, 749 F. Supp. 2d at 222 (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)). Nonetheless, the burden is placed on the party offering expert testimony to show that it meets each of the standards for admissibility. *Id.* (citing *Daubert*, 509 U.S. at 592 n.10).[8]

## III. DISCUSSION

In its Motion, Defendant argues that Plaintiff's expert, Professor Sedlik, should be precluded from testifying about Plaintiff's "actual damages" on the grounds that he lacks the requisite qualifications to opine upon this subject matter, and that, even if he is qualified, his

---

[8]    Neither party requested oral argument or an evidentiary hearing on the Motion. The Third Circuit has held that a trial court need not conduct an evidentiary hearing on a *Daubert* challenge if the record is sufficient to allow the Court to make a determination on the issues in dispute. *See, e.g., Oddi v. Ford Motor Co.*, 234 F.3d 136, 151-55 (3d Cir. 2000). Here, Professor Sedlik's expert reports were provided to the Court; they addressed the basis of Professor Sedlik's conclusions and included his *curriculum vitae*. Under such circumstances, the Court has determined that the record before it is sufficient to allow for decision as to the admissibility of Professor Sedlik's testimony under *Daubert*. *See, e.g., Furlan v. Schindler Elevator Corp.*, No. 12-2232, 2013 WL 1122649, at *3 (3d Cir. Mar. 19, 2013); *Oddi*, 234 F.3d at 151-55; *Withrow*, 2013 WL 4510305, at *5 n.6 (citing cases).

6

opinions are based on unreliable principles and methodology that do not fit the facts of this case. (D.I. 177; D.I. 188) After setting out the legal standard applicable to calculating actual damages in the copyright infringement context, the Court will address these arguments in turn.

## A.    Legal Standard Regarding "Actual Damages"

Actual damages for copyright infringement are governed by 17 U.S.C. § 504(b), which states that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement[.]" The purpose of actual damages is to assess damages from the point of view of the copyright owner and "compensate the [copyright] owner for any harm he suffered by reason of the infringer's illegal act." *On Davis v. Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001); *see also Am. Bd. of Internal Med. v. Von Muller*, Civil Action No. 10-CV-2680, 2012 WL 2740852, at *4 (E.D. Pa. July 9, 2012).

While the statute does not elaborate on how the damages are to be calculated, courts have construed "actual damages" by examining the fair market value of a license fee that the copyright owner would have obtained for the infringer's use of the copyrighted material. *On Davis*, 246 F.3d at 165; *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, Civil Action No. 4:08-cv-03181, 2010 WL 4366990, at *11 (S.D. Tex. Oct. 27, 2010); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 648 (S.D. Tex. 2007); *Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc.*, 335 F. Supp. 2d 466, 468 (S.D.N.Y. 2004). "[W]here the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff's work." *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) (internal quotation marks and citations omitted). The fair market value approach "is an objective, not a subjective, analysis." *Jarvis*, 486 F.3d at 534

7

(internal quotation marks and citations omitted); *see also On Davis*, 246 F.3d at 166 ("The question is not what the owner would have charged, but rather what is the fair market value."). It "simply seeks to determine the fair market value of a valuable right that the infringer has illegally taken from the owner." *On Davis*, 246 F.3d at 172. Courts have permitted the fair market value of a reasonable license fee to be calculated by an expert. *See Brown v. Columbia Recording Corp.*, No. 03 Civ. 6570 DABTHK, 2006 WL 3616966, at *3 (S.D.N.Y. Dec. 12, 2006) (citing cases).

In assessing actual damages, excessively speculative claims must be rejected. *Jarvis*, 486 F.3d at 534 (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985)); *see also On Davis*, 246 F.3d at 166 (noting that the amount of damages claimed by a copyright owner in an infringement case "may not be based on undue speculation") (internal quotation marks and citation omitted). However, "finding the fair market value of a reasonable license fee may involve some uncertainty," and such uncertainty "is not sufficient reason to refuse to consider this as an eligible measure of actual damages." *On Davis*, 246 F.3d at 166. Indeed, "when courts are confronted with imprecision in calculating damages, they 'should err on the side of guaranteeing the plaintiff a full recovery.'" *Id.* at 164 (quoting *Sygma Photo News, Inc. v. High Soc'y Magazine*, 778 F.2d 89, 95 (2d Cir. 1985)).

## B. Qualifications of Professor Sedlik

Defendant argues that while Professor Sedlik has experience in the photography industry, he is not qualified to calculate Plaintiff's actual damages because he is not an accountant or other financial expert. (D.I. 177 at 13-14) However, Defendant points to no legal authority in support of the proposition that in order to calculate actual damages in a copyright infringement case, an

8

expert must be an accountant or financial professional. Indeed, to the contrary, courts have permitted experts in the relevant field of licensing, who had knowledge of relevant licensing fees, to testify about actual damages in such cases. *See, e.g., Brown*, 2006 WL 3616966, at \*4 (finding that expert with three years of experience negotiating and drafting music industry licenses was qualified to testify regarding plaintiff's actual damages); *Barrera v. Brooklyn Music, Ltd.*, 346 F. Supp. 2d 400, 409 (S.D.N.Y. 2004) (finding that expert with extensive work experience in the stock photography industry was qualified to provide an opinion regarding plaintiff's actual damages).

Here, Professor Sedlik's *curriculum vitae* makes clear that he has extensive experience in the area of photography licensing. (Preliminary Report, ex. A) For instance, Professor Sedlik is the current President and CEO of the PLUS Coalition, which is the international photography industry licensing metadata standards body. (*Id.* at 1, 6) He operates a company dedicated to licensing his own photographic images for various usages, and has served on advisory boards in which he was consulted on issues including stock photography licensing.[9] (*Id.* at 1) Professor Sedlik has written articles on licensing that have been published in various photography publications and has taught classes on the subject. (*Id.* at 4, 7) In light of these qualifications, the Court finds that Professor Sedlik has sufficient knowledge, skill and experience in the stock photography industry to qualify him to provide an opinion regarding Plaintiff's actual damages.

## C. Reliability and Fit of Professor Sedlik's Opinions

In purporting to calculate Plaintiff's actual damages, Professor Sedlik did not incorporate

---

[9] A "stock photograph" is a photograph that already exists (in contrast to a commissioned photograph, which a client hires a photographer to create). *Barrera*, 346 F. Supp. 2d at 409 n.1.

9

the licensing fees that Plaintiff himself has previously charged clients for the Images, instead relying on license fee quotes that he obtained from several stock photography agencies. (Preliminary Report at 26-29) Professor Sedlik contends that these quotes match the alleged unauthorized usages to the greatest extent possible. (*Id.* at 27) Professor Sedlik explains that he then calculated average licensing fees, using these quotes, based on the "information available to [him], including . . . the number of uses of each image, the media in which the photographs were reproduced, the reproduction quantity, size and placement of reproduction, and the period of use." (*Id.* at 26) In making his calculations, Professor Sedlik claims that he also relied on his "personal knowledge and experience in image licensing." (*Id.* at 27) To ensure that the licensing fees corresponded with the relevant time frame, Professor Sedlik adjusted the fees to 2006 market rates by referencing pricing data that his firm had obtained during that year. (*Id.* at 26-27 & exs. L, M, N)

Defendant argues that Professor Sedlik's methodology for calculating Plaintiff's actual damages is unreliable and that his proposed testimony does not "fit" the facts of this case for the same basic reason: he "entirely ignores Leonard's own history of licensing fees he has charged or received for the subject images or other similar images, and, instead, utilizes inflated licensing fees of large outside stock photography agencies that charge over five [] times for their images what Leonard himself charges." (D.I. 177 at 13) For the following reasons, the Court determines that any limitations as to Professor Sedlik's proposed testimony in this regard are more appropriately pursued by way of cross-examination, as opposed to exclusion via *Daubert* and its progeny.

First, because it is well-settled that actual damages may be determined by examining the

10

fair market value of a license fee that the plaintiff would have obtained for the defendant's use, *see supra* at 7-8, the Court finds that the principles and methodology utilized by Professor Sedlik in calculating Plaintiff's actual damages are sufficiently reliable. Defendant cites to a host of cases for the proposition that "courts have consistently utilized [a] plaintiff's own licensing fees, as opposed to randomly selected licensing fees charged by other photographers or stock photography agencies for other photographers' images, to calculate his or her actual damages." (D.I. 188 at 3 (emphasis in original)) And indeed, unsurprisingly, courts have often analyzed a plaintiff's own licensing fees for this purpose.

However, as Plaintiff points out, the caselaw is also clear that actual damages may be calculated in different ways. (D.I. 179 at 13); *see, e.g., On Davis*, 246 F.3d at 167 (courts may calculate fair market value of a license fee by looking to "established rates that are regularly paid by licensees"); *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH, 2010 WL 334446, at *3 (N.D. Cal. Jan. 28, 2010) (jury permitted to consider evidence regarding a hypothetical license fee in determining actual damages, in case where plaintiff had never before licensed the copyrighted work at issue). None of the cases to which Defendant cites stand for the proposition that an expert calculating actual damages *must* rely on the plaintiff's past licensing fees, or that a failure to do so automatically renders an expert's methodology unreliable, and the Court has not located any such case.

Indeed, courts have emphasized that the standard for calculating a copyright owner's actual damages is objective, and thus fair market value can be established where: "'(1) a plaintiff demonstrates that he previously received compensation for use of the infringed work; *or* (2) the plaintiff produces evidence of benchmark licenses, that is, what licensors have paid for use of

11

similar work.'" *Recursion Software, Inc., v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2012 WL 1576252, at *6 (E.D. Tex. May 4, 2012) (quoting *Interplan Architects, Inc.*, 2010 WL 4366990, at *11) (emphasis added); *see also Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1276 (M.D. Fl. 2008) (citing cases). Here, Plaintiff's expert utilized the latter methodology to arrive at an estimated actual damages figure. It may well be true that Professor Sedlik's apparent choice not to utilize Plaintiff's own previous licensing fees for Images 3 and 4 (or for other of Plaintiff's images) in calculating actual damages should affect the weight that the factfinder affords his testimony; it is certainly a decision that provides fodder for vigorous cross-examination. *See Jarvis*, 486 F.3d at 534 (noting that court considered and then ultimately "*discounted [expert's] testimony*" because expert had "relied almost exclusively" on a stock photography agency's website "for his figures") (emphasis added) (internal quotation marks and citations omitted).[10] However, because the type of analysis utilized by Professor Sedlik has been expressly accepted by courts in copyright infringement cases, the Court cannot conclude that such a methodology—calculating Plaintiff's estimated actual damages in reliance on quotes from four stock photography agencies for various usages of similar images—is unreliable.

Second, and relatedly, because the quotes that Professor Sedlik relied upon in calculating Plaintiff's actual damages are for the use of similar photographs to the Images at issue here, and are for similar usages of the photographs to those at issue here, there is sufficient "fit" between the facts of this case and Professor Sedlik's actual damages calculation. The Images at issue are

---

[10]      Plaintiff does not offer a great deal by way of explanation as to *why* Professor Sedlik did not rely on Plaintiff's prior licenses of Images 3 and 4 in his calculations. However, Plaintiff does suggest that this is because there are relatively few such invoices, that "many, if not all, of [those invoices] were for editorial or educational uses" and that "[l]icense fees for such uses are considerably less than fees for commercial use." (D.I. 179 at 2)

12

photographs of stem cells, and the images that Professor Sedlik used in order obtain quotes are also scientific images that appear to depict stem cells. (*See* Preliminary Report at 26-28 & ex. G, H, I & J) Likewise, Professor Sedlik requested quotes regarding a range of usages of those images—usages of the type alleged to have been made by Stemtech here. (*Id.*) As the standard for fit is not a high one, and Rule 702 "embodies a liberal policy of admissibility," *Withrow v. Spears*, Civil Action No. 12-06-LPS-CJB, 2013 WL 4510305, at *5 (D. Del. Aug. 22, 2013) (internal quotation marks and citation omitted), these factors render Professor Sedlik's proposed testimony sufficiently connected to the issues in the case such that it is relevant. *Cf. Country Road Music, Inc. v. MP3.Com, Inc.*, 279 F. Supp. 2d 325, 331-32 (S.D.N.Y. 2003) (excluding expert opinion and testimony regarding actual damages where expert relied on "a single, inapposite [benchmark] license," and thus there was "'simply too great an analytical gap between the data and the opinion proffered'") (quoting *Gen. Elec. Co. v. Joiner*, 552 U.S. 136, 146 (1997)).

Defendant makes a number of other arguments in support of its contention that Professor Sedlik's actual damages calculation is unreliable and fails to fit the facts of the case. For instance, Defendant asserts that the images that Professor Sedlik uses to adjust his averages down to 2006 rates are landscape and portrait photographs (not scientific images), and are therefore not relevant. (D.I. 177 at 11; D.I. 188 at 7) The Court agrees that these images are not similar to the subject Images in the same way as were the images that Professor Sedlik utilized in order to obtain comparable quotes. However, these images were used for a more limited purpose—merely as a reference point to "adjust[] the fees [regarding comparable images] to 2006 market rates[.]" (Preliminary Report at 26-27 & ex. L, M, N) Defendant provides no

13

authority to support exclusion of an expert opinion on this basis, and the Court believes that Defendant's argument here goes largely to the weight that Professor Sedlik's testimony should be afforded in this area, rather than to its admissibility.[11] Defendant's arguments are thus more properly reserved for cross-examination. *See In re Adams Golf, Inc.*, C.A. No. 99-371-GMS, 2009 WL 1913241, at *2 n.3 (D. Del. July 1, 2009); *see also INVISTA N. Am. S.A.R.L. v. M&G USA Corp.*, Civ. No. 11-1007-SLR-CJB, 2013 WL 3216109, at *4 (D. Del. June 25, 2013) (noting that to the extent a party "disputes the assumptions underling [an expert's] testimony [], such disagreements are more properly reserved for cross-examination"); *Recursion Software, Inc.*, 2012 WL 1576252, at *4 (stating that "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system" and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence") (internal quotation marks and citation omitted).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's *Daubert* Motion is DENIED.

---

[11]     This is also true of Defendant's other arguments—that is, that: (1) Professor Sedlik uses unduly speculative or incorrect assumptions in order to calculate actual damages, as to the applicable scope of the licensing fees regarding Stemtech's purported infringement and the duration of that infringement; and (2) the quotes that Professor Sedlik relies upon are much higher than Leonard's own licensing fees, rendering his calculations irrelevant. (D.I. 177 at 11-13; D.I. 188 at 7-8) The Court agrees that these issues may be properly subjected to criticism, but any deficiency would go to the weight of Professor Sedlik's opinion, rather than its admissibility.

Dated: September 23, 2013

Christopher J. Burke
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

15